**J. W. FORD, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13978.**

Court of Criminal Appeals of Oklahoma.

July 26, 1967.

Sandlin & Daugherty, Holdenville, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Penn Lerblance, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge.

J. W. Ford, hereinafter referred to as Defendant, was charged, tried and convicted in the District Court of Hughes County for the offense of Lewd Molestation of a Minor Child. He was tried by a jury on the 7th and 8th days of October, 1965, was found guilty and his punishment fixed at one year in the State Penitentiary at McAlester, Oklahoma. Judgment and sentence was entered against the Defendant on the 27th day of October, 1965, and he appeals.

Briefly, stated, the record discloses that on the night of December 29, 1964, Mr. and Mrs. J. W. Ford took Mrs. Ford's infant daughter for emergency treatment to the Physicians & Surgeons Clinic & Hospital in Holdenville, Oklahoma. The attending physician, upon examining the infant, ascertained that she had lost a large quantity of blood resulting from fresh tears and lacerations of her vagina, torn almost to the rectal area. Emergency treatment was given the injured infant and the attending physician, after receiving unsatisfactory information as to the cause of the injury, notified the then Sheriff of Hughes County. Prior to the arrival of the authorities, the Defendant, J. W. Ford, left the hospital, picked up his mother and returned to the hospital with his mother. At the hospital he was placed under arrest, searched and examined, taken to the Hughes County jail, where articles of his clothing were taken from him, preserved as evidence, and introduced on the trial of the case. He was questioned on the evening of his arrest and he denied any knowledge as to how the injuries to the child were inflicted. He remained in the custody of the Hughes County authorities incommunicado until the morning of December 31, 1964, at which time he was ushered to the office of the then assistant county attorney, James W. Rodgers, Jr., who advised him of his right to counsel and upon being informed that the Defendant had no money with which to hire one, told the Defendant that he would be appointed one when he was later taken before the Judge. The Assistant County Attorney then advised the Defendant that he would not have to make any statements and proceeded to interrogate the Defendant until certain incriminatory statements were made. (These statements were introduced during the trial over the objection of defendant's attorney). Defendant was advised during interrogation that he would be charged with the crime of Rape, which he later was, but said charge was dismissed and the instant charge instituted against him. After this interrogation, the Defendant was returned to the

county jail where he remained until he was again ushered into the County Attorney's office on January 6, 1965, at which time he was questioned by Mr. Turner, the then County Attorney. A number of officers were present during this questioning, together with the defendant's wife, and the father of the child and former husband of the wife. It was during this interrogation that the purported oral statements of the Defendant were reduced to writing.

During the trial, the State sought to introduce these statements, but in a hearing outside the presence of the jury the court refused to admit them.

■ The principal assignment of error urged on appeal is that the trial court erred in admitting incriminatory statements allegedly made by the Defendant to the Assistant County Attorney on the morning of December 31, 1964. We observe at the outset that Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, has no application in the instant case since it was delivered by the Supreme Court of the United States on June 13, 1966, and did not operate retroactively; nor do we deem it necessary to consider the applicability of the rule enunciated in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, delivered by the Supreme Court prior to the trial of the instant case, since under our view of the record it is abundantly clear that the first purported confession was not the product of an essentially free and unconstrained choice by its maker, since his capacity for self-determination was so critically impaired as to render the statements inadmissible. We believe this conclusion is inescapable for the record affirmatively discloses that the defendant is a white male, 34 years of age, who could neither read nor write and who had not successfully completed the third grade in school because he was intellectually incapable of doing so. It further appears that after denying any knowledge of how the injury was inflicted to the infant, he was held incommunicado until questioned by the Assistant County Attorney three days after his arrest.

We place great significance on the fact that the defendant could understand only questions asked in simple terms and that his ability to speak coherently was so impaired that during the two interrogations it was necessary for the prosecutors to repeat to him his alleged statements to which he would nod his head either "yes" or "no." Even more illuminating than the facts heretofore set forth, is the statement of the trial judge in ruling inadmissible the second purported statement made by the defendant. The following are excerpts of the court's statements to the prosecuting attorney made outside the presence and hearing of the jury:

"BY THE COURT: * * * you're trying to make a case against this defendant out of the legal bounds. You have no right to—to bring this—the—these matters in that didn't happen. You can't—it's not in this alleged statement that you're talking about.

* * * * * *

BY THE COURT: That's your—that's your statement. I can—I can take this man right now and then probably take him back here and make him agree to anything in the world that I wanted—wanted him to agree to.

* * * * * *

BY THE COURT: Well, I'm going to—this man's going to have a fair trial in this court, I can tell you that. If you can't—if you can't prove this man's guilty from the testimony of the witnesses in the case, I'm not going to let you take a man that's under arrest, with his wife's sweetheart in the room with them and officers and all, and a man of this mental capacity; and—and you could get him to say anything * * *"

In light of the court's ruling and the facts as above set forth, we reiterate our conclusion that the defendant at the time of making the purported statements, was intelligently incapable of comprehending and exercising his right to counsel and the

privilege to remain silent. The purported statements under all of the circumstances here presented, could not have been the voluntary product of an essentially free and unconstricted choice by the Defendant, and it was error to admit them.

For this reason, this case is reversed and remanded for a new trial.

NIX, P. J., and BRETT, J., concur.